

751

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4370
Re: (1) Whether place of business
such as that conducted by a
wholesale or retail merchant
where merchandise is received
on consignment, to be paid for
when sold, is subject to oc-
cupation tax provided for by
Subdivision 12, Article 7047,
R.C.S., as amended, Acts 1931,
42nd Legislature, p. 355, ch.
212, Sec. 1.
(2) Construction of Subdivision
6, Article 7047, R.C.S.

In your letter of March 19, 1942, supplemented
by your letter of April 13, 1942, you request the opinion
of this department construing the provisions of Subdivision
12, Article 7047, R.C.S., as amended by Acts 1931, Forty-
second Legislature, p. 355, ch. 212, Sec. 1, and of Sub-
division 6, Article 7047, R.C.S., as amended, Acts 1931,
Forty-second Legislature, p. 355, ch. 212, Acts 1939, Forty-
sixth Legislature, House Bill 745, Sec. 1.

Your first question presents a situation where
the manufacturer, who is overstocked or wishes to market
a new product, places merchandise on the floor of the place
of business of a retailer or wholesaler, with the under-
standing that such merchandise will be paid for when sold,
and if not sold within a specified time such merchandise
may be returned to the manufacturer. You inquire whether
or not Subdivision 12, Article 7047, as amended, subjects
such wholesale or retail merchant to the occupation tax
levied by such subdivision on commission merchants.

Subdivision 12, Article 7047, R.C.S., as amended,
reads as follows :

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, Page 2

"Brokers. - Merchandise and Commission Merchants. - From every person, firm, association of persons, or corporation, following the business or occupation of merchandise broker and/or commission merchant, either at wholesale or retail, in cities or towns of twenty-five thousand (25,000) or less population, an annual tax of Fifteen Dollars ($15.00); and in cities of more than twenty-five thousand (25,000) population an annual tax of Twenty-five Dollars ($25.00). A commission merchant in the meaning of this Act is every person, firm, association of persons, or corporation, receiving country produce, horses, cattle, sheep, hogs, grain, corn, hay, lumber, shingles, wood, coal, goods, wares and merchandise or anything else for sale, to be accounted for to the owner when sold and charging a commission therefor. The provision of this Section shall not be construed as taxing the traveling salesman."

Title 30, Revised Civil Statutes, defines and regulates commission merchants. Article 1374, R. C. S. defines a "commission merchant" as follows:

"Any person, firm or corporation pursuing, or who shall pursue the business of selling produce, or goods, wares or merchandise of any kind upon consignment for a commission, shall be held to be a commission merchant."

Article 1281, R.C.S., defines a "livestock commission merchant" thus:

"Any person, firm or corporation, who shall pursue the business of selling live stock, cattle, cows, calves, bulls, steers, hogs, sheep, goats, mules, horses, jacks, and jennets or any of them, upon consignment for a commission or other charges, or who shall solicit consignment of live stock as a commission merchant or agent, or who shall advertise or hold himself out to be such, shall be deemed and held to be a live stock commission merchant within the meaning of this subdivision and subject to all the provisions and penalties herein prescribed."

Honorable George H. Sheppard, Page 3


It will be seen that Subdivision 12, Article 7047, is broad enough to include both "commission merchants", and "livestock commission merchants" as they are each defined in Title 30.

In the case of Stein Double Cushion Tire Co. v. Wm. T. Fulton Co., 159 S. W. 1013, in which writ of error was denied, where the contract stipulated that tires were to be shipped by the Stein Company to the Fulton Company, such merchandise to be of a specified quality and to be paid for by Fulton Company at a given price, payment to be made each month for tires sold that month, and at the expiration of the agreement, the Fulton Company to purchase all unsold tires, the court held that such agreement was one of consignment for sale on commission, and was not a sale to the Fulton Company. The court said:

> "These provisions of the contract, it oc-
> curs to us, clearly indicate that it was the
> purpose and intention of the parties thereto
> to constitute the Fulton Company of Texas ap-
> pellant's factor or agent to sell the goods
> delivered to it on commission; the general prop-
> erty in the goods remaining in the consignor."

There was no provision in the contract as to the price for which the tires were to be sold, nor was there any provision as to any compensation to the Fulton Company for the sale of such tires. The contract was entirely silent on these matters. Later cases follow the holding in the Stein case. Renfroe v. Hall, 202 S. W. 218; Falls Rubber Co. v. La Fon, 256 S. W. 577. In the latter case, where tires were shipped on a contract by which title was to re-main in the shipper until they were sold in the regular course of business, to be accounted for to shipper when sold at a stipulated price, the Commission of Appeals in a judgment adopted by the Supreme Court held that the con-tract was an agreement of consignment for sale on commis-sion, though the sole compensation received by the consignee for the sale of such merchandise consisted of the difference between the price paid to the consignor and the price re-ceived by consignee on sale of the goods.

This rule was first stated by our Supreme Court in the case of Hamilton v. Milling, 73 Tex. 603, 11 S. W. 843. That case has been consistently followed since, and we think it is decisive of your inquiry. We, therefore,

Honorable George H. Sheppard, Page 4

answer your first question in the affirmative.

Your second question reads as follows:

"2. Is a member of the firm or an employee of a commission merchant, individually subject to the Auctioneer's occupation tax, as levied by subdivision 6 of Article 7047, Revised Civil Statutes, in addition to the tax paid by the commission merchant, if the firm member or the employee auctions livestock, grain or other merchandise at the place of business of the commission merchant only?"

The first paragraph of Article 7047, Revised Civil Statutes, reads as follows:

"There shall be levied and collected from every person, firm, company or association of persons, pursuing any of the occupations named in the following numbered subdivisions of this article, an annual occupation tax, which shall be paid annually in advance except where herein otherwise provided, on every such occupation or establishment as follows:

Subdivision 6, Article 7047, Revised Civil Statutes, as amended, now reads:

"Auctioneers. From every Auctioneer, an annual tax of Twenty-five Dollars ($25)."

Article 121, Penal Code, provides that whoever shall pursue or follow any occupation, calling or profession or do any act taxed by law without having first obtained a license therefor shall be fined not less than the amount of taxes due nor more than double such amount.

The word "occupation", as used in Article 7047, has been defined by our courts to mean a vocation, trade or business in which one principally engages to make a living or obtain wealth. Johnson v. State, 138 Tex. Cr. Rep. 370, 136 S. W. (2d) 837; Robbins v. State, 57 Tex.

Cr. R. 462, 125 S. W. 695.

In the absence of a legislative definition the judicial construction of the term "occupation" controls. To be an "auctioneer", then, within the meaning of Article 7047, as construed by our courts, one must engage in the vocation of auctioneer in order to make a living or to obtain wealth. "Auctioneer" is not defined by any statute nor do we find any Texas case defining the word. Webster's New International Dictionary (2nd Ed.) defines an auctioneer as: "A person who sells or makes a business of selling at auction." That, we think, is the meaning ordinarily assigned to the word. If the principal vocation by which one makes his living or obtains wealth is that of selling at auction, then we hold that he is pursuing the occupation of auctioneer, and is subject to the tax, under Subdivision 8, Article 7047. This is true no matter where he follows such occupation, be it at his own or any other person's place of business and irrespective of the person or firm by whom he is employed.

We trust that the above fully answers your inquiry.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 5 1942

By

FIRST ASSISTANT
ATTORNEY GENERAL

Fowler Roberts
Assistant

FR:LM

